In the Matter of the Estate of SIDNEY SMITH, Deceas(

*(Surrogate's Court, Madison County, Filed March, 1893.)*

COLLATERAL INHERITANCE TAX—APPRAISAL OF PROPERTY OMITTED.

While the decree of the surrogate in a proceeding under section 13 of the act is conclusive upon the State and the property affected

thereby cannot be reappraised; yet where property was withheld from the appraiser, whether intentionally or otherwise, and therefore was not appraised, such omitted property may be assessed in proceedings under sections 16 and 17.

Motion to dismiss collateral inheritance tax proceeding.

H. M. Aylesworth, district attorney (H. B. Coman and S. D. White, of counsel), for petitioner; William Man (S. M. Lindsley, of counsel), for respondents.

KENNEDY, S.—Sidney Smith, a resident of Madison County, died on the 29th day of October, 1886, leaving a large amount of personal and real estate in possession of his committee. On the 28th day of December, 1886, the surrogate of this county appointed Adon.Smith administrator of his estate, and he thereupon duly qualified and entered upon the discharge of his duties. On the 3rd day of March, 1887, said administrator filed in the office of the surrogate an inventory of the personal estate of said decedent, which amounted to the sum of $390,872.83. On the 26th day of February, 1887, the surrogate appointed William M. Henderson appraiser for the purpose of ascertaining the amount of the inheritance tax to which the State was entitled. On the 26th day of March, 1887, said appraiser filed his report, whereby he appraised the property of said decedent liable to said tax at the sum of $484,000. The surrogate, after making certain deductions from the reported amount of the estate, adjudged the value of the property liable to taxation at the sum of $270,000, and assessed a tax of $13,500 thereon, which was duly paid by said administrator. On the 23rd day of October, 1888, a judicial settlement of said estate was had before the surrogate, and distribution was ordered according to law.

On the 3rd day of July, 1890, H. M. Aylesworth, then district attorney of this county, upon due notice from the county treasurer, presented to the surrogate a petition, wherein it was alleged, upon information and belief, that the personal estate of said Smith, instead of being $390,000, was in fact more

than $700,000, and that said appraisal was procured by said
Adon Smith and others by false and fraudulent representations
as to the amount and value of said estate, and by fraudulent
concealment from the appraiser as to the true condition thereof.
Upon these facts, said Aylesworth asked, among other things,
that a citation be issued requiring all persons interested in the
property liable to the inheritance tax to appear in Surrogate's
Court and show cause why said tax should not be paid, and for
such other order, decree and relief as might be just and proper;
whereupon a citation was issued in accordance with the prayer
of the petition.   Upon the return of the citation, the adminis-
trator and some others of the interested parties appeared spe-
cially and filed answers alleging, among other matters of de-
fense, a lack of jurisdiction in the surrogate to entertain the
proceedings, because of the fact that there had been an appraisal
of the estate, and the surrogate had already assessed the tax due
thereon, and the same had been paid.   The surrogate overruled
the objections of the respondents, whereupon they appealed to
the General Term of the Supreme Court.   After argument
upon the issue raised by the petition and answers, the court
affirmed the ruling of the surrogate.   From this decision the
respondents did not appeal.   Subsequently, they appeared in
Surrogate's Court and filed their answers in this proceeding.
At the close of the evidence on the part of the petitioner the
respondents again moved to dismiss the proceeding upon the
ground of lack of jurisdiction by the surrogate to entertain the
same.

The respondents rely upon the opinion in the Matter of the
Estate of Wolfe, 137 N. Y. 205, 50 St. Rep. 406, as authority
for the position assumed by them, to wit, that after one appraisal
has been had, the surrogate cannot require another appraisal to
be made, while the counsel for the petitioner claim that it has
no application to this case and rely upon other reasons and deci-
sions in support of their theory of the law.

We shall hold, however, that the Wolfe case amply justifies
the practice adopted in this proceeding, plainly suggests the

ground upon which it may be maintained, clearly and concisely points out the procedure by which the inheritance tax may be collected, and the principles which underlie the system of taxation in this State introduced by chapter 483 of the Laws of 1885, known as the collateral inheritance tax act.

As a basis for our conclusions of law, we quote from Judge GRAY's opinion, as follows:

"When we read all the provisions of this act, it is perfectly apparent that an especial system of taxation was created for the benefit of the State, with all the necessary machinery for its working; the control of which was vested in the Surrogate's Court, with a jurisdiction exclusive in its nature. In the assessment of a tax upon property passing by will or by the intestate laws, the responsibility is imposed by law upon the surrogate. He acts for the State, and he is commanded to assess and fix the tax to which the property is liable. * * * When the machinery of this system of taxation is set in motion under section 13 of the act, whether upon the application of interested parties, or upon his own motion, the surrogate, by force of its provisions, is at once vested with the office and the functions of an assessor for the State, whose duty it is to assess for its use a tax; and in whom, not only by virtue of the office, but by the further provisions of section 15, inheres the authority, and upon whom rests the obligation to determine the question of whether the property of the decedent, which passes to others, is subject or liable to taxation by the State. * * * I can see no difference between the principle upon which the surrogate acts in proceeding to assess property for taxation under the act and that upon which, in the general system of taxation in the State tax assessors act in the assessment of persons or property for taxation."

Parallel illustrations will show that Judge GRAY is correct when he says that there is no difference in the principle upon which a surrogate and town assessors act in the assessment of persons and property, and we now point out their similarity as follows:

The town assessors are required to ascertain by diligent inquiry all the taxable property, real and personal, within their town, and to assess the value thereof.

It is the duty of the surrogate to appraise the property of a decedent at what was the fair and clear market value thereof at the time of the death of the decedent; and, in order to fix the value of the property of persons whose estates shall be subject to the payment of said tax, the surrogate is authorized to appoint some competent person as appraiser, as often as and whenever occasion may require the appraisal of the decedent's property.

Chapter 453 of the Laws of 1865, in relation to property liable to, but omitted from, assessment by the assessors, authorizes the assessors to enter the omitted property on the assessment roll at the valuation of the preceding year, and the board of supervisors are required to lay a tax thereon at the rate per cent. of tax imposed upon land or property in said town the preceding year.

Chapter 483 of the Laws of 1885, the inheritance tax act, sections 16 and 17, points out the procedure to be followed in case a tax has been assessed but not collected, or in case it is due, but has been omitted from assessment by the surrogate. Judge GRAY says the tax may be due because the surrogate so determined under section 13, or where no proceedings have been had for its appraisement.

Having shown that the principles upon which the surrogate and town assessors act are similar, we state the result of this application in this case.

The surrogate appointed an appraiser for this estate. The appraiser examined and appraised all the property which the administrator presented to him for appraisal, and made and filed his report. He had no authority then, as he now has, to subpœna witnesses and interrogate them under oath as to the true condition of the estate. He had no personal knowledge of it, and all that he could do was to accept the voluntary statement of the administrator or others as to its character and of what

it consisted. There is no dispute but that the report of the appraiser, upon which the surrogate acted, appraised all the property presented to him by the administrator for his consideration or valuation, and all the property mentioned in the inventory filed by the administrator. As to this property, thus appraised, upon which the surrogate has assessed the tax, we hold that the decree of the surrogate is conclusive upon the State, and that such appraisal, assessment and decree cannot be attacked in this proceeding.

If it be true that a large amount of property was withheld from the consideration of the appraiser, whether intentionally or otherwise, and as to which the appraiser had no knowledge, and the same was, for this reason, not appraised, we shall hold, as to such omitted property, that the state has the legal right to institute such proceedings for the recovery of such tax as may be due thereon. This omitted property has never had its day in court. It has never been submitted to the jurisdiction of the appraiser or surrogate, and therefore has never been put in jeopardy. It has, intentionally or otherwise, eluded the tax due the State. All that the Wolfe case decides is, that where property has once been submitted to the surrogate for taxation, his decree, if wrong, can only be reviewed upon appeal, and cannot be attacked in another proceeding. It does not hold that other property, upon which a tax is due, cannot be assessed under sections 16 and 17, in another proceeding for that purpose. The statute says that the surrogate shall appoint a competent person appraiser, as often as and whenever occasion requires; and the reason given by the courts for this provision of the law is, that property may be fraudulently concealed, accidentally overlooked, or it may not be known to the representative of the decedent at the time of the appraisement.

We do not understand by this that property which has once had its day in court, for the purpose of taxation, can be reappraised, unless, for some cause, such appraisal has been, on appeal, or otherwise, re-opened or set aside by the court. Only such property as has been omitted from appraisal is to be taken into consideration.

We, therefore, hold that if the allegations of the petitioner in this proceeding are true, the State has the legal right to an appraisal of the property of Sidney Smith, deceased, which has not been appraised, and upon which the tax has not been assessed by the surrogate in the former proceeding for that purpose.

The motion of the respondents for the dismissal of this proceeding is, therefore, denied.