FRANK IAMS, APPELLANT, V. FARMERS STATE BANK ET AL.,
APPELLEES.

FILED NOVEMBER 3, 1917.  No. 20007.

1. **Banks and Banking:** DEPOSITORS' GUARANTY FUND: DEPOSIT.
Where money purporting to be a deposit is placed in a state bank,
for which the bank issues and delivers to the purported depositor
certificates of deposit in terms providing for payment of 5 per
cent. annual interest, and where by an understanding between
the parties the bank pays to such person a bonus of 1 per cent.
above the lawful rate of 5 per cent. interest, *held*, such trans-
action does not constitute a deposit within the meaning of the bank
depositors' guaranty act (Rev. St. 1913, secs. 280-345), but is a
mere loan of money to the bank.

2. ———: ———: ———. Where such bank fails and a receiver is
appointed, certificates so obtained cannot lawfully be paid out
of the depositors' guaranty fund. Rev. St. 1913, sec. 306.

3. ———: ———: LIABILITY. Subsequent to the issuance of the initial
certificates, which were renewed from time to time, the corporate
name of the bank was changed, the bank remaining unchanged in
identity and personnel and in all respects, except as to name, the
same as before the change in corporate name. *Held*, that such
change in corporate name in no way affected the transaction be-
tween the parties.

APPEAL from the district court for Burt county:
GEORGE A. DAY, JUDGE. *Affirmed.*

*John L. Webster* and *William R. King,* for appellant.

*Willis E. Reed, Attorney General,* and *George W.
Ayres, contra.*

DEAN, J.

In pursuance of a petition filed on May 24, 1916, by
the attorney general and subsequent proceedings in the
district court for Burt county, a receiver was appointed
for the Farmers State Bank, then a failing institution at
Decatur. On September 25, 1916, Frank Iams filed a
petition in the case, alleging ownership of 5 certificates
of deposit issued by the bank in pursuance of alleged de

posits of $12,000, and praying that his claims be allowed and paid as a preferred claim against the assets of the bank or the depositors guaranty fund. The certificates range in amount from $2,000 to $3,000 each, and except as to date and amount, necessary to conform to the fact, they are all in the following form:

"Decatur, Neb. April 16, 1916, No. 1138. This certifies that Frank Iams has deposited with Farmers State Bank two thousand dollars payable to the order . of himself in current funds on the return of this certificate properly indorsed six or twelve months on demand after date with interest until maturity only at 5 per cent. per annum. This deposit is protected by the depositors' guaranty fund of the state of Nebraska.

"THEO HENNIG, V. Pres."

The attorney general filed a protest objecting to the payment of the certificates from the depositors' guaranty fund, for the alleged reason that by a fraudulent agreement between the parties the bank paid to appellant a bonus of 1 per cent. interest in addition to the 5 per cent. named in the certificates, thus creating an excessive and illegal rate, and that the certificates for that reason represent a loan by appellant to the bank, and not a deposit. Judgment was rendered denying appellant the right to participate in the depositors' guaranty fund, but the claim was "allowed as a general creditor claim against the Farmers State Bank." The petitioner has appealed.

Prior to July, 1915, the corporate name of the Farmers State Bank, the appellee herein, was Farmers & Merchants State Bank. The personnel of the bank, the identity of the corporation, and the ownership and control of the business and the assets, and liability for the debts and corporate acts remained unchanged under its new name. The certificates in suit are renewals of certificates issued by the bank in its former name of Farmers & Merchants State Bank, and any infirmity that may have been imparted to the original certificates by an unlawful act, such as an agreement for an unlawful rate

of interest, as the attorney general charges in the present case, would inhere in and vitiate the entire series of renewal certificates. The record shows clearly the payment of a bonus of 1 per cent. over the 5 per cent. allowed by statute for the use of the money of appellant that was placed in the bank while it was doing business under its former name. And it is not clear that a bonus of 1 per cent. over the lawful rate of 5 per cent. interest was not received by appellant from the bank after the certificates were renewed and while the bank was doing business in its new name. Appellant was called as a witness by the state, and, his attention being directed to three of the renewal certificates in suit, he was asked if he received "anything other than the rate stated in the certificates," to which he replied: "I may have received a present." On cross-examination he testified on this feature of the case: "I received $40 in cash from some one in a letter without anything on it. I do not know who it was from or anything about it. I can only surmise." The cashier of the bank, while it was doing business as the Farmers & Merchants State Bank and later as the Farmers State Bank, testified on the same point on cross-examination: "Q. Well, at the time you made these respective payments that you have spoken of by way of a bonus, were you at that time an officer or cashier of the Farmers & Merchants State Bank? It is the bank I want to identify. A. Yes, sir; I was. Q. And not as an officer of the Farmers State Bank? A. Yes; both. * * * Q. I will put it another way. None of these payments of a bonus in any manner or form to which you testified to, none of them were made after the dates of the issuing of these certificates of deposit by the Farmers State Bank, beginning with the one numbered 1048, dated October 14, 1915? A. I do not think I ever testified to any payment—that I made any payment as late as any of these dates." The foregoing testimony of appellant seems fairly to indicate the reception by him of a bonus from the bank after the renewal of the certificates, and the cashier's testimony, though not alto-

gether clear, may, when analyzed and considered in connection with the other testimony in the record, be construed as a failure at least to deny that a bonus was paid by him to appellant after the renewals in suit were issued.

Section 306, Rev. St. 1913, that provides for payment of interest on deposits follows: "No banking corporation transacting a banking business under this article shall pay interest on deposits directly or indirectly at a greater rate than 5 per cent. per annum. Any officer, director or employee of a bank violating the provisions of this section directly or indirectly, shall be deemed guilty of a felony and on conviction thereof shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the state penitentiary not exceeding three years, or both."

The payment by the bank to appellant of a bonus of 1 per cent., interest, whether made in the name of Farmers & Merchants State Bank or in the name of Farmers State Bank, was a clear defiance of the plain terms of the statute. The transaction between the parties was fraudulently conceived. It was a device intended to evade the provisions of the act. It is therefore clear that appellant's money was not a deposit within the meaning of the law. It did not partake of that part of the statutory characteristic of a deposit which provides for interest at only 5 per cent. per annum. The money that appellant placed in the bank, by whatever name it may be called, is a stranger to the act in question and cannot find asylum within its purview. The law will leave the parties where it finds them. The court properly found that appellant was only a general creditor of the bank. *Storz & Iler v. Finklestein,* 46 Neb. 577; *Gould v. Kendall,* 15 Neb. 549; Bishop, Contracts (2d ed.) sec. 1112; 10 Cyc. 155.

It may be observed that punishment by fine or imprisonment for violation of the act is by its terms con-

fined to officers, directors, and employees alone, but that question is not before us.

A change of corporate name cannot be permitted to operate to relieve the bank or appellant from the direct consequence of their joint act, nor from such liability as they may have incurred in the premises. By operation of the provisions of the statute that appellant violated, he is estopped from pressing his claim to participate in the bank guaranty fund. The act creating the depositors' guaranty fund was intended by the legislature to be a shield of protection against loss to those who in good faith deposit their money in state banks in compliance with the terms of the statute. Unless its provisions are fairly construed and impartially enforced, this salutary law might become a destructive sword in the hands of unscrupulous persons having unlawful designs on the depositors' guaranty fund.

The judgment of the district court is

AFFIRMED.

SEDGWICK, J., not sitting.