STATE, EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL,
APPELLEE, V. KILGORE STATE BANK: FRED A. CUMBOW,
RECEIVER, APPELLEE: YOUR BANK OF ELI,
CLAIMANT, APPELLANT.

FILED SEPTEMBER 29, 1925.   No. 23403.

1. **Banks and Banking:** GUARANTY FUND: LIABILITY.  The depositors' guaranty fund is not liable for the payment of a bank deposit which has been placed in a state bank which subsequently fails, unless both the depositor and the bank come within the provisions ·of the bank depositors' guaranty law in respect of such deposit.  Comp. St. 1922, sec. 7982 *et seq.; Iams v. Farmers State Bank,* 101 Neb. 778.

2. ———: ———: ———.  Money, or its equivalent, must be deposited in a bank to bring the transaction within the meaning and the protection of the bank depositors' guaranty law.

3. ———: ———: DEPOSITS.  "In order to create a deposit which will be protected by the guaranty law, as the term 'deposit' is understood in section 8033, Comp. St. 1922, it is necessary that money or its equivalent shall in intention and effect be placed in or at the command of the bank under circumstances which do not transgress specific limitations of the bank guaranty law."  *State v. Farmers State Bank,* 111 Neb. 117.

4. ———: ———: ———: INNOCENT PURCHASER.  Where a bank certificate of deposit has been issued by a state bank which subsequently fails, and, by reason of the facts under which it was issued, such certificate does not come within the protection of the bank depositors' guaranty law, a subsequent holder, no matter what may be the fact, cannot invoke the plea that he is an innocent purchaser, and thereby come within the protection of the law in question.

5. ———: ———: ———: ———.  One cannot become an innocent holder, or purchaser, of a bank certificate of deposit, which has been unlawfully issued, let its form or its recitals be what they may, in the sense that such purchaser, or holder, can come within the protection of the bank depositors' guaranty law.

6. **Appeal:** AFFIRMANCE.  Under the evidence, the judgment is without reversible error, and it is affirmed.

APPEAL from the district court for Cherry county:
WILLIAM H. WESTOVER, JUDGE.  *Affirmed.*

*W. B. Haley, E. D. Crites* and *F. A. Crites,* for appellant.

O. S. Spillman, Attorney General, C. M. Skiles, James C. Quigley and J. J. Harrington, contra.

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY and THOMPSON, JJ.

DEAN, J.

February 21, 1921, the Kilgore State Bank, hereinafter called the Kilgore bank, issued a 5 per cent. time certificate of deposit, in the principal sum of $2,200, which, by its terms, was "payable to the order of themselves in current funds October 24, 1922." On the same date the Your Bank of Eli, hereinafter called the claimant, or claimant bank, maintains that the Bank of Cody, hereinafter called the Cody bank, which is not a party to this suit, had $2,200 on deposit in the Kilgore bank, and that for this sum, so on deposit, the Kilgore bank issued, and delivered to the Cody bank, the above-mentioned certificate in the usual form. The contention is that the Cody bank, in the ordinary course of business, before maturity and for value, sold, assigned, and delivered the certificate to the claimant bank, properly indorsed, and that claimant is now the owner and holder thereof.

June 21, 1922, the claimant, alleging ownership of the certificate, and previous insolvency of the Kilgore bank, filed its verified claim, or petition, as it is designated in the record, in the district court for Cherry county, for an allowance of its claim in full, and prayed that Fred A. Cumbow, the receiver of the Kilgore bank, thereunto appointed by lawful authority, be ordered to pay the claimant bank $2,200, with interest, out of the depositors' guaranty fund, in satisfaction of its claim.

The attorney general, in behalf of the state, and of the receiver, admits the issuance of the certificate of deposit by the Kilgore bank, but alleges that the Cody bank did not have $2,200 in lawful money of the United States, or its equivalent, or any other sum of money, on deposit in the Kilgore bank, when the certificate was issued. It is also alleged that it was issued, without authority, by the

president of the Kilgore bank. The argument is that the $2,200 certificate was issued in exchange for a $2,600 note and mortgage, obtained by assignment from a stranger to this suit. It may be added that the difference of $400 between the apparent face value of the $2,600 note and mortgage and the $2,200 certificate of deposit, for which it was exchanged, was explained by the president of the Cody bank. But in view of our decision on the merits this circumstance will not be further noticed.

The security, above referred to, is a recorded third mortgage lien on 800 acres of land in Cherry county. The state contends that the note and mortgage so exchanged by the claimant bank for the certificate are now, and at all times material to this inquiry were, valueless and had no market value whatever, for the reason that the land, upon which the third mortgage is a purported lien, had been previously mortgaged by the owners, the Christensen brothers, for its full value.

The court sustained the contention of the state and, from the evidence of Cherry county residents fixing the value of the Christensen land at from $7.50 to $15.00 an acre, found and decreed that the note and mortgage were "worthless at the time they were exchanged for said certificate of deposit," and that nothing was due the claimant Eli bank, on the Kilgore bank certificate, which it obtained from the Cody bank, "either against the assets of the said defendant Kilgore State Bank or against the state bank guaranty fund." A motion for a new trial was overruled, and the Eli bank, as claimant, appealed.

The receiver testified that, upon examination of the Kilgore bank records and bank books, he found that the Cody bank was never "given any credit in this transaction for any money deposited," but that the Kilgore bank books show "the coming in of the note that has been offered here in evidence for $2,600 and the issuance of the certificate of deposit for $2,200 for it." It appears that the receiver tendered the $2,600 note and mortgage to the Cody bank and, the tender being refused, it was renewed in open court,

on condition that the certificate of deposit be returned, but the tender was again refused.

Mr. Skeen is president of the Cody bank. In respect of the $2,600 note, he testified that it was a secured note. "Q. And what sort of security? A. It was a second mortgage I think, on real estate. * * * Q. What was the amount of the prior mortgage? A. There was a $6,400 mortgage, or maybe that was $6,000, and a commission mortgage of $400 to Hess & Company of Council Bluffs, ahead of our mortgage." He further testified in respect of the price which was paid for the land in 1919 by the Christensens: "Q. Do you know what the entire consideration was—the purchase price? A. Yes. Q. How much was that? A. They paid $12,000 for it. Q. Which, as you stated, was $3,000 in cash, a $6,000 mortgage assumed, and a $400 mortgage assumed, and a purchase mortgage of $2,600 which you got and sold to the Kilgore State Bank? A. Yes, sir." It also appears from Skeen's evidence that the Christensen note and mortgage was the sole consideration which was paid for the certificate of deposit in suit. The year 1919 was a "boom year" in land prices in Cherry county, as one witness testified, and it may be noted that the prevailing conditions were the same elsewhere. And the mortgage in suit was a third lien.

Counsel for claimant have made an able argument in support of their contention, but we are not convinced that the claimant Eli bank, under the evidence, is entitled to have its claim paid from the depositors' guaranty fund in satisfaction of its certificate. In *State v. Farmers State Bank,* 111 Neb. 117, attention is directed to a like situation in the following language: "The circumstances under which the guaranty fund may be liable are entirely apart from the law pertaining to negotiable paper." And this is fundamental. In the same case it is observed that there is a distinction "between the liability of the maker of a negotiable instrument, which rests upon the law pertaining to negotiable paper, and the liability of the guaranty fund, which is purely statutory." We adhere to the views expressed in the *Farmers State Bank* case.

776 NEBRASKA REPORTS. [VOL. 113

State, ex rel. Davis, v. Kilgore State Bank.

The policy of the law in this jurisdiction is that the bank depositors' guaranty fund is not liable for a bank deposit which has been placed in a state bank, which subsequently fails, unless both the depositor and the bank come within the provisions of the law in question in respect of such deposit. Comp St. 1922, sec. 7982 *et seq.; Iams v. Farmers State Bank,* 101 Neb. 778. And this court is thoroughly committed to the proposition that money, or its equivalent, must be deposited in a bank to bring the transaction within the meaning and the protection of the bank depositors' guaranty law. The note and mortgage in question lack much of being "money, or its equivalent," and therefore do not come within the meaning of the act. In *State v. Farmers State Bank,* 112 Neb. 380, it is pointed out: "The law will look through all semblances and forms to ascertain the actual facts as to whether there has been a *bona fide* deposit, and, if not, the guaranty fund does not protect the transaction, no matter how it may be evidenced." To substantially the same effect is *State v. Gross State Bank, ante,* p. 119, and cases there cited.

It may be noted that a like rule prevails in other jurisdictions. In a recent Kansas case, in an opinion by Burch, J., a bank deposit was defined in this language: "Speaking generally, to create a deposit, within the meaning of the statute, money or the equivalent of money must in intention and effect be placed in or at the command of the bank, under circumstances which do not transgress specific limitations of the bank guaranty law." *Fourth Nat. Bank v. Bank Commissioner,* 110 Kan. 380. See *American State Bank v. Bank Commissioner,* 110 Kan. 520.

We adopted and approved the language of the Kansas court in the following cases: *State v. Banking House of A. Castetter,* 110 Neb. 564; *State v. Farmers State Bank,* 111 Neb. 117; *State v. Home State Bank, ante,* p. 93; *State v. Gross State Bank, ante,* p. 119. •

In a recent case this was said: "The fund protects deposits only. And if no deposit is made, or no deposit within the protection of the guaranty law, the transfer of a cer-

tificate cannot impose a liability on the fund." And in the same case the court observed: "Where a certificate of deposit is given under such circumstances that it is not protected by the guaranty fund, although that fact is not indicated by anything on its face, its indorsement to an innocent holder cannot confer that quality upon it." *American State Bank v. Bank Commissioner,* 110 Kan. 520.

The controlling feature in the case before us is the established fact that neither money, nor its equivalent, in the sum of $2,200, nor in any other sum, was placed on deposit in, or at the command of, the Kilgore bank by the Cody bank, as a fund, or as a thing of value, upon which the $2,200 certificate of deposit in suit could be lawfully issued. The evidence in respect of the prior incumbrances on the Christensen land, as given by Mr. Skeen, the president of the Cody bank, speaks for itself, and no language of this court, on this feature of the case, can be added which would lead to a more complete understanding of the unauthorized transaction in question here.

It clearly appears that the certificate of deposit in suit does not come within the protection of the bank depositors' guaranty law. Nor would it come within its protection even in the hands of an innocent purchaser for value, as argued by the claimant bank. One cannot become an innocent holder, or purchaser, of a bank certificate of deposit, which has been unlawfully issued, let its form or its recitals be what they may, in the sense that such purchaser, or holder, can come within the protection of the bank depositors' guaranty law. It follows that, in this case, it is not necessary to pass upon the question of whether the claimant bank is an innocent purchaser.

It has not yet come to pass that a promissory note, its only security being a valueless third mortgage lien on land, may ripen into a valid obligation against the bank guaranty fund on the ground that such note and mortgage have come into the hands of an innocent purchaser, or holder, for value. It is perfectly obvious that, to hold to the contrary, might be the means of opening a door to an unlawful as-

sault upon the integrity of a wisely beneficent act which was designed by the legislature to protect the money of good faith depositors in state banks.

The evidence amply sustains the judgment of the trial court in holding that the Christensen note and mortgage were "worthless at the time they were exchanged for said certificate of deposit."

We conclude that the court did not err in its findings and judgment that the Your Bank of Eli was not entitled to be made a preferred creditor, either as against the assets of the defendant Kilgore State Bank or as against the depositors' guaranty fund.

The judgment of the trial court is right, and is in all things

AFFIRMED.